Hunt v. Texas Industries 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-026-CV

     D. V. HUNT ASPHALT, INC., ET AL.,
                                                                                              Appellants
     v.

     TEXAS INDUSTRIES, INC.,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 42,156
                                                                                                    

O P I N I O N
                                                                                                    

      Texas Industries, Inc. manufactures and sells a product known as lightweight aggregate, used
by the Texas Department of Transportation to resurface state highways. Lightweight aggregate
is beneficial on highway projects because it has a higher skid factor than limestone or other
aggregates and because it does not tend to break windshields. In 1986, D. V. Hunt Asphalt, Inc.
was the general contractor for the state on a 174-mile highway resurfacing project in Ellis,
Kaufman, and Navarro counties. Employers Insurance of Wausau provided a payment bond in
connection with the highway project as required by the McGregor Act. Hunt entered into a
written agreement to purchase approximately 24,651 cubic yards of lightweight aggregate from
Texas Industries to be delivered to twenty-nine sites along the highway project.
      After the completion of the project, Texas Industries sued Hunt on a sworn account and for
breach of contract, alleging that $98,764.03 remained unpaid on the Hunt account. Texas
Industries also filed a suretyship claim against Wausau. Hunt filed an answer claiming that
because discounts and credits of $98,764.03 had been properly taken, the account was paid in full. 
Hunt maintained that Texas Industries furnished far less aggregate than was provided by the sales
contract and that, as a result, Hunt had been overbilled by Texas Industries.
      At trial, after Texas Industries rested, Hunt moved the court to instruct a verdict in its favor
without calling any witnesses to rebut Texas Industries' evidence that it delivered 25,352.82 cubic
yards of lightweight aggregate to the highway project. The court denied Hunt's motion for
instructed verdict and submitted the case to the jury. The jury found (1) that Hunt owed Texas
Industries $98,764.03, (2) that Texas Industries sent notice of its claim to Hunt and Wausau on
November 7, 1986, and (3) that Texas Industries incurred reasonable attorneys' fees totaling
$38,561.63. The court denied Hunt's motion to disregard findings and its motion for judgment
notwithstanding the verdict, and the court rendered judgment on the verdict. Finally, the court
denied Hunt's motion for new trial, and Hunt appeals.
      More lightweight aggregate is required to fill a standard measuring bucket if the aggregate
is dry than is necessary if it is wet. Unfortunately for Hunt and Wausau, our charge is not to
measure quantities of raw materials used to resurface our state highways; instead, it is to measure
the sufficiency of the evidence to support the jury's verdict in our state courts. Because we find
the evidence legally and factually sufficient to support the verdict in this case, we affirm.
      Hunt contends in point one that the court erred in denying its motion to disregard findings and
its motion for judgment notwithstanding the verdict because there is no evidence to support the
jury's answers to the liability and damage questions of the charge. Hunt argues that judicial
admissions by Texas Industries' witnesses preclude its right of recovery. Alternatively, Hunt
argues that Texas Industries failed, as a matter of law, to prove the elements of the suit on a sworn
account, the breach of contract claim, or the suretyship action. In point two, Hunt contends that
the court erred in denying its motion for new trial because the evidence is factually insufficient to
support the verdict. As in point one, Hunt argues that judicial admissions rendered Texas
Industries' evidence factually insufficient to support the verdict. Alternatively, Hunt argues that
the evidence is factually insufficient to prove the elements of the suit on a sworn account, the
breach of contract claim, or the suretyship action.
      In reviewing the "no evidence" point, we consider only the evidence and inferences that tend
to support the finding, disregarding all evidence and inferences to the contrary. Davis v. City of
San Antonio, 752 S.W.2d 518, 522 (Tex. 1988). When reviewing the jury verdict to determine
the factual sufficiency of the evidence, we must consider and weigh all the evidence, and should
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
      At trial, Texas Industries' sales manager, Tom Chestnut, testified that lightweight aggregate
is sold by the cubic yard. He testified that they measured the aggregate sold to Hunt using a
method prescribed by the American Society for Testing and Materials, the standard in the
industry. According to Chestnut, each truck was weighed on platform scales under the loadout
bins before and after being loaded with lightweight aggregate for delivery to the job sites. By
subtracting the weight of the empty truck from the weight of the loaded truck, Texas Industries
calculated the total weight of each truckload of aggregate. 
      Texas Industries used a standard unit-weight bucket, regularly calibrated to measure exactly
one-half cubic foot of lightweight aggregate, to determine the cubic yards of aggregate in each
truck. Both Chestnut and Richard Todd, Texas Industries' sales coordinator, testified that they
sampled the unit-weight of the aggregate from at least every third truck loaded at the plant. 
According to Todd, after the truck was loaded, they filled the unit-weight bucket with a scoop and
struck the aggregate off level with the top of the bucket before weighing it on a calibrated scale. 
By subtracting the weight of the empty bucket from the weight of the full bucket, they calculated
the weight of one-half cubic foot of aggregate. The weight of one cubic foot of aggregate was then
used to convert the total weight of each truckload to cubic yards. 
      Todd testified that the conversion factor ranged from 46.3 to 51.5 pounds per cubic foot
depending on the amount of moisture in the aggregate. According to Todd, the unit-weight
conversion factor corrected for moisture when determining the actual cubic yards of aggregate per
truckload. However, Todd acknowledged on cross-examination that the ASTM standards required
the use of a tapping rod to determine the compact unit-weight unless the shoveling procedure to
determine the loose unit-weight was specifically stipulated. Nevertheless, Todd testified that they
had found the shoveling method to be the most accurate in making the unit-weight conversion.
      Although Chestnut testified that a container of wet material has the same volume of aggregate
as a container of dry material, Todd admitted that if the material was wet, the number of cubic
yards of aggregate on the truck was less than if the material was dry. Todd also acknowledged
that, according to the ASTM standards relied upon by Texas Industries, "aggregates in hauling
units and stockpiles usually contain absorbed and surface moisture (the latter affecting bulking),
while this test method determines the unit weight on a dry basis." (Emphasis added).
      Regardless of the ASTM standards, we find that the testimony of Texas Industries' employees
does not amount to judicial admissions precluding proof of delivery of the number of cubic yards
of lightweight aggregate for which Hunt was billed; neither does it render the evidence legally or
factually insufficient to support Texas Industries' suit on a sworn account, breach of contract
claim, or suretyship action. A party's testimonial declarations that are contrary to his position are
quasi-admissions—merely some evidence to be considered by the trier of fact. Mendoza v. Fidelity
and Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1990). A quasi-admission will
be treated as a judicial admission only if it appears that:
(1) the declaration relied upon was made during the course of a judicial proceeding;
 
(2) the statement is contrary to an essential fact embraced in the theory of recovery or
defense asserted by the person giving the testimony;
 
(3) the statement is deliberate, clear, and unequivocal, i.e., the hypothesis of mere
mistake or slip of the tongue must be eliminated;
 
(4) the giving of conclusive effect to the declaration will be consistent with the public
policy upon which the rule is based; and
 
(5) the statement is not also destructive of the opposing party's theory of recovery.

Id.

      Hunt offered no evidence that it had ordered a certain number of cubic yards of compacted
aggregate. Neither did Hunt demonstrate that the use of compact unit-weight to calculate cubic
yards of aggregate sold was the standard in the industry. To the contrary, Joe Moore, co-owner
of Moore Asphalt, testified that as a supplier of precoated lightweight aggregate his company used
a loose unit-weight conversion factor similar to that used by Texas Industries, that he did not have
a tapping rod, and that he did not know of a more accurate method to measure the cubic yards of
aggregate placed in a truck for delivery to a customer. Therefore, the testimony of Chestnut and
Todd regarding the conversion method used by Texas Industries was not contrary to an essential
fact embraced in the theories of recovery embraced—sworn account, breach of contract, and
suretyship. See id.
      To prevail in a suit on sworn account, a party must show that: 
(1) there was a sale and delivery of the merchandise or performance of the services;
 
(2) the amount of the account is just, i.e., that the prices were charged in accordance with
an agreement or in the absence of an agreement, that they are the usual, customary, and
reasonable prices for that merchandise or services; and
 
(3) the amount is unpaid.

Worley v. Butler, 809 S.W.2d 242, 245 (Tex. App.—Corpus Christi 1990, writ).

      Todd testified that Texas Industries shipped 25,352.82 cubic yards of lightweight aggregate
to Hunt. Chestnut testified that the prices were charged in accordance with a written sales contract
admitted into evidence. Finally, Hunt's check to Texas Industries indicated that deductions had
been made for a discount that had expired under the terms of the sales agreement ($3,038.14), a
1,719.50 cubic-yard loss of aggregate on this project ($46,770.40), and a 1,680.01 cubic-yard loss
of aggregate from an unrelated project completed by Hunt in 1985 ($48,955.49). We find that
there is legally and factually sufficient evidence to support the jury finding that Hunt owes Texas
Industries $98,764.03. As a result, Texas Industries' suretyship action and claim for attorney's
fees is supported by its recovery on the sworn account. See Tex. Rev. Civ. Stat. Ann. art. 5160
(Vernon Supp. 1992); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1986). We
overrule points of error one and two.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed May 13, 1992
Do not publish